**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2012

No. 11-20210

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

TONYA BUCKNER WOMACK; DONALD RAY WOMACK,

Defendants-Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CR-822-2

Before STEWART, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A husband and wife were indicted for offenses arising out of their business of preparing federal income tax returns. The indictment alleged one count of conspiring to defraud the United States by obstructing the collection of income taxes and by assisting in the preparation of false income tax returns, *see* 18 U.S.C. § 371, and 25 counts of aiding and assisting in the preparation of false income tax returns. *See* 26 U.S.C. § 7206(2). Thirteen of the counts charged the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20210

husband, while the remaining twelve charged the wife.  A jury convicted them on every count.  We AFFIRM.

## FACTS

Donald and Tonya Womack were the owners and operators of Front Door Tax Services, a small company that prepared personal income tax returns in Houston, Texas.  Originally, Donald was the only person who prepared returns for the business.  Donald misrepresented that he was an accountant who had worked previously for the IRS.  As business grew, he sought assistance in preparing the returns from his wife, Tonya.  At first, Tonya only provided support services to Donald.  Her responsibilities progressed until she registered with the IRS to obtain an electronic filing identification number so that she could file client returns electronically.  Donald used this identification number as well.  At some point, Tonya began to prepare tax returns for customers.  To learn the proper methods for preparing a return, she attended a tax preparation course provided by a national tax-preparation business.

The Womacks came to the attention of the Internal Revenue Service due to unusual deductions claimed on returns they prepared.  A federal grand jury returned a 26-count indictment against the couple, alleging a conspiracy and aiding and assisting in the preparation of false tax returns.  A jury trial was held in the United States District Court for the Southern District of Texas.

The government's case concerned 26 of the thousands of returns the Womacks prepared.  One government witness was Robert Walenta.  Front Door prepared his return, which prompted an IRS inquiry because it claimed a substantial deduction for vehicle mileage.  The IRS told Walenta he needed to submit documentation to support the deduction.  When Walenta told Donald, Donald offered to provide fraudulent mileage logs that could be given to the IRS.

Other taxpayers also testified.  They explained how their returns claimed deductions that were not permitted, such as charitable deductions although the

2

No. 11-20210

taxpayer never donated to charity or mortgage-interest deductions although the taxpayer did not own a home. The taxpayers all testified that they never provided the Womacks with any information that would justify the inclusion of those deductions on their tax returns. Tonya testified that any errors contained in the tax returns she prepared were honest mistakes due to her unfamiliarity with the specific requirements of the tax code.

The government also called an undercover IRS agent. As part of the investigation, the agent went to Front Door to have a tax return prepared. He brought along the necessary paperwork. The agent calculated he legitimately would owe about $300 in taxes. He testified that Front Door offered him a choice of three refunds: $3,200, $3,500, or $4,200.

At the close of the government's case, both Donald and Tonya moved for acquittal. This motion was denied. Tonya, but not Donald, put on evidence. Her theory was that each of her errors were accidental mistakes.

The jury found Donald and Tonya guilty on all counts. The district court sentenced Donald to 60 months imprisonment and three years of supervised release. Tonya was sentenced to 33 months of imprisonment and three years of supervised release. Both were ordered to pay restitution of $161,855, for which they are jointly and severally liable. They appeal.

## DISCUSSION

There are five issues: (1) Were jurors improperly allowed to consider, in deciding Tonya's guilt, the fact that Donald prepared false mileage logs; (2) did the district court err in denying funding to the defense for an expert witness; (3) was there reversible error in the government's closing statement; (4) was there sufficient evidence to convict Donald; and (5) did the district court err by denying Donald's motion for a fifth continuance?

I.    *District Court's Jury Instruction Regarding Fraudulent Mileage Logs*

No. 11-20210

Tonya argues the district court erred by informing the jurors that they could consider, when determining her criminal intent, that Donald attempted to give false mileage logs to a customer. She did not object at trial, which leads us to review the instruction for plain error only. *See United States v. Smith*, 354 F.3d 390, 396 n.7 (5th Cir. 2003). To establish plain error, Tonya must demonstrate the district court committed (1) an error, (2) that was clear or obvious, and (3) that affected her substantial rights. *United States v. Burns*, 526 F.3d 852, 858 (5th Cir. 2008). In the context of jury instructions, "[p]lain error occurs only when the instruction, considered as a whole, was so clearly erroneous as to result in the likelihood of a grave miscarriage of justice." *United States v. Garcia*, 567 F.3d 721, 728 (5th Cir. 2009) (quotation marks and citation omitted).

The instruction Tonya challenges related to the use of the evidence under Rule 404(b). Under that rule, evidence of other acts may be introduced to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Generally, these other acts are only relevant to the actor. For this reason, the other acts of one person usually cannot be used to show the intent of another. *See United States v. Cihak*, 137 F.3d 252, 258 & n.3 (5th Cir. 1998). There is an exception when the individuals are part of a conspiracy, but the alleged conspiracy here ended before Donald offered the false logs. *See United States v. Mann*, 161 F.3d 840, 859-60 (5th Cir. 1998).

Prior to the testimony, the district court provided the following instruction:

> The evidence that you are hearing, ladies and gentlemen, is evidence of -- that pertains to acts of the defendants that may be similar to those charged in the indictment but which were committed on other occasions.
> You must not consider any of this evidence in deciding if either of the defendants committed the acts that are charged in the indictment. You may, however, consider this evidence for other limited purposes. If you find beyond a reasonable doubt from other

4

> evidence in this case that either of the -- or both of the defendants did commit the acts charged in the indictment, then you may consider the evidence that you are now hearing of similar acts allegedly committed on other occasions to determine whether either or both of the defendants had the state of mind or intent necessary to commit the crimes charged in the indictment, or whether either or both of the defendants committed the acts for which they are on trial by accident or mistake.

Tonya believes the instruction was erroneous because it referred to "the defendants" collectively instead of only to Donald. She argues the instruction impermissibly linked her to Donald's bad act.

The district court gave this instruction before it knew the scope or implication of the testimony. Because of the uncertainty, there was a chance the testimony would apply to Tonya as well as to Donald. Although it is now clear that the testimony only implicated Donald, the district court did not have the benefit of being in our position. We neither expect nor require the district court to be omniscient. At the time the instruction was given, it was not clearly erroneous for the district court to refer to both defendants.

Even if there had been error, the district court's later instruction mitigated any prejudice. At the end of the trial, when it was known that the testimony only concerned Donald, the district court instructed the jury that it could use the evidence only against him. This instruction limited any prejudice that may have existed. *See United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002).

There was no plain error on this issue.

## II.  *Denial of a Motion for Employing an Expert Witness*

The Womacks appeal the district court's denial of funds to retain an expert witness. The Womacks wanted an expert who could testify that most of the returns they prepared were not fraudulent. The district court refused. We review that ruling for an abuse of discretion. *United States v. Hardin*, 437 F.3d

463, 468 (5th Cir. 2006).

The Womacks are considered indigent defendants. Counsel for an indigent defendant may request expert services and, "[u]pon finding . . . that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services." 18 U.S.C. § 3006A(e)(1). This statutory command requires district courts to "grant the defendant the assistance of an independent expert under § 3006A when necessary to respond to the government's case against him, where the government's case rests heavily on a theory most competently addressed by expert testimony." *Hardin*, 437 F.3d at 468 (quotation marks and citation omitted). If the expert's testimony would be irrelevant, however, it would not be necessary and the district court may deny the request. *See* 18 U.S.C. § 3006A(e)(1).

This issue consumed a good deal of time before trial. It was discussed at a pre-trial conference and the court then requested briefing. After the briefs were submitted, the district court held another conference on the question.

In their brief and during the conferences, the Womacks did not identify any binding precedent to support their position. On multiple occasions, the Womacks explained that the evidence would only be relevant if the government strayed from the indictment and alleged that most of the returns the Womacks prepared were fraudulent. The government advised that it was not its intent to make those types of allegations. Given this assurance, the Womacks noted that the need for an expert may not be ripe for determination pretrial and instead could be addressed later.

With this understanding, the district court concluded that expert testimony would be irrelevant. Its ruling reflects the understanding that prior good acts, like bad acts, can be relevant but generally are not. *See United States v. Dobbs*, 506 F.2d 445, 447 (5th Cir. 1975). The court shared the Womacks' concern that there was some chance that the government's case could drift off

course, but concluded that it would be possible to limit this danger without incurring the large costs associated with their request. The record reflects agreement by the Womacks on this point.  Under these circumstances, the Womacks have not shown that the district court abused its discretion.

The Womacks argue that the government did wander off course during trial and violated this pretrial understanding.  If that occurred, it creates an issue that is independent of what we have just concluded was a valid decision not to fund an expert.  We examine next what occurred during trial.

### III.    *Government's Closing Statement*

Tonya asserts that the government's closing statement materially misstated the evidence presented at trial in two ways.  First, she argues that the government impermissibly linked her to the false mileage logs offered by Donald.  Second, she contends the government claimed that every tax return prepared by Front Door was fraudulent.

Because she did not object to the statements at the time they were made, we review for plain error.  *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005). "Plain error exists if (1) there was error; (2) the error was clear and obvious; and (3) the error affected a substantial right." *Burns*, 526 F.3d at 858. An error is clear if its existence cannot be reasonably debated.  *See United States v. Bohuchot*, 625 F.3d 892, 897 (5th Cir. 2010).  Generally, an error affects a defendant's substantial rights "if there is a reasonable probability that the result of the proceedings would have been different but for the error." *United States v. Montes-Salas*, 669 F.3d 240, 247 (5th Cir. 2012).

When reviewing the propriety of closing remarks, context matters. *Burns*, 526 F.3d at 858.  A statement that could appear defective if analyzed in isolation may lose its tarnish once it is viewed in the light of the entire trial.  Moreover,

No. 11-20210

because closing statements are not evidence, counsel are provided generous leeway. *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007).

The first asserted error concerns the government's statement that both Tonya and Donald offered false mileage logs to a customer. Because there was no objection made at the time, Tonya must show more than the existence of error; she must also prove prejudice. *See Burns*, 526 F.3d at 858. Generally, any prejudicial impact attributable to a closing statement can be contained by the district court's instructions to the jury. *See United States v. Turner*, 674 F.3d 420, 439-40 (5th Cir. 2012). The district court's instructions here, which we presume the jury followed, reminded the jury that it could only consider certain evidence when determining guilt. *See id.* at 430. Tonya has not expressed any objection to these instructions. With these safeguards in place, Tonya has not shown that there is a reasonable probability that she would have been acquitted had the government not made the remark. *See id.* at 439-40.

Tonya also contends that the government committed plain error when it commented on the manner in which Front Door was run. She focuses on two different portions of the closing. The government, after recounting an instance of alleged fraud, stated that:

> The benefit to the Womacks were happy customers, repeat business, client who gets a big refund this year is liable to go back next year. And once in the door, what did Mr. and Mrs. Womack do? They prepared amended returns, that is, they took the taxpayers back to prior tax years and had them change what they had reported one, two or three years in the past. They charged fees, and this was a way for the Womacks to build the clientele, build revenue, get people in the door, get people coming back next year.
>
> And because of this, of course, they obtained a competitive advantage. Their competitors in the tax preparation field, imagine being an honest tax preparer trying to build a clientele. The honest tax preparer can't promise a large refund every year. Sometimes an honest tax return preparer has to tell the client the way it is. And

8

No. 11-20210

an honest tax preparer cannot compete with a false and fraudulent tax preparer. You can see the advantage that the defendants have. Of course, who wouldn't want a $4,000 refund when in fact maybe you owed $300? You see how the Womacks motivated people to use their business and pay them their fees.

Now, the income that Mr. and Mrs. Womack generated was just fine. If you do a little simple math that they prepared 3,000 returns a year and charged approximately $150 per return, that comes out to a revenue of over -- about $450,000.

Towards the end of its closing statement, the government returned to this issue:

The way to make money at this operation is a volume business. You get them in, you charge them $150, you run up how many thousands of returns you can do in a year. And they're mostly crammed in that tax season. You heard Mrs. Womack say that. Before April 15th, you're just churning them out like it's a factory, 20 to 25 a day in a slow day, she says. It gets worse than that. The only way you can churn them out like that is if you cookie-cutter, churning out the same Schedule A and the same Form 2106 over and over again, just tinkering a little bit with the numbers. That's how you are make money.

These statements are vague. The interpretation pressed by Tonya is that the government argued that almost all the returns prepared by the Womacks were fraudulent. If that is so, the government's statement is not supported by the evidence presented. It is a reasonable interpretation, especially when certain sentences are read in isolation. It is not, however, the only reasonable interpretation.

Placed in the broader context, the government's statement may also be seen as a description of how the Womacks acquired customers. Under this theory, a few fraudulent returns played a small yet critical role in attracting new business. Testimony established that under Front Door's pricing structure, a customer was charged a fee of $140 regardless the size of the refund secured. The most efficient way of acquiring new business was by referrals from pleased customers. These customers were generally unfamiliar with the tax code and,

by preparing similar fraudulent tax returns for some of them, the Womacks could establish a reputation for obtaining large refunds. The fraud therefore was limited to the extent necessary to maintain a reputation for finding large deductions for clients. Under this interpretation of the government's remarks, there was no erroneous allegation of systematic fraud. Rather, the allegation was that some fraudulent returns helped keep business coming through the door. That argument is not devoid of evidentiary support.

Our standard of review does not require us to decide which of the competing interpretations is most reasonable. Because the statement can be interpreted in two ways, one of which is free of error, Tonya cannot establish plain error. *See Bohuchot*, 625 F.3d at 897.

## IV.　*Sufficiency of the Evidence Against Donald*

Donald argues that the evidence presented by the government was insufficient for a jury to convict. He preserved this challenge by moving for a judgment of acquittal at the end of the government's case-in-chief. *See United States v. DeLeon*, 247 F.3d 593, 596 & n.1 (5th Cir. 2001).

We review *de novo* a properly preserved challenge to the sufficiency of the evidence. *United States v. McElwee*, 646 F.3d 328, 340 (5th Cir. 2011). We construe "all the evidence, direct and circumstantial, in the light most favorable to the jury's verdict, accepting all reasonable inferences and credibility choices in favor of that verdict." *United States v. Griffin*, 324 F.3d 330, 356 (5th Cir. 2003) (quotation marks and citation omitted). We will affirm "if a rational trier of fact could have found that the government proved all essential elements of a crime beyond a reasonable doubt." *United States v. Thompson*, 647 F.3d 180, 183 (5th Cir. 2011). For the evidence to be sufficient, it "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every

conclusion except that of guilt." *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999) (quotation marks and citation omitted).

Donald challenges the sufficiency of the evidence for the conspiracy count as well as for aiding and assisting the preparation of false tax returns. To obtain a conviction for conspiracy under 18 U.S.C. § 371, the government had to prove beyond a reasonable doubt that there was (1) an agreement between Donald and Tonya, (2) to commit a crime, (3) an overt act by one of the conspirators in furtherance of the agreement, and (4) the specific intent to commit the crime. *See United States v. Garza*, 429 F.3d 165, 168-69 (5th Cir. 2005); *see also Cheek v. United States*, 498 U.S. 192, 200-01 (1991). Donald contends there was insufficient evidence to prove an agreement or to prove that the Womacks knew they were claiming illegal deductions for their customers. We first address the evidence of an agreement.

A "jury may infer the existence of an agreement to a conspiracy from testimony and the other circumstantial evidence." *United States v. Zamora*, 661 F.3d 200, 209 (5th Cir. 2011) (marks and citation omitted). This evidence includes the conduct of the alleged co-conspirators. *United States v. Garcia*, 917 F.2d 1370, 1376 (5th Cir. 1990). The evidence presented here, viewed in its proper light, was sufficient to prove the existence of an agreement. The record establishes that Front Door was a small business operated by a husband and wife. Donald and Tonya were the only two people who prepared tax returns, they discussed the details of their business with each other, used the same electronic filing identification number to file returns, and made similar errors in the preparation of the relevant tax returns. It was reasonable for the jury to infer an agreement from this evidence.

There was also sufficient evidence to prove the requisite intent. "Intent may, and generally must, be proven circumstantially." *United States v. O'Banion*, 943 F.2d 1422, 1429 (5th Cir. 1991) (quotation marks and citation

No. 11-20210

omitted). Usually, "[p]roof of such intent . . . can arise by inference from all of the facts and circumstances surrounding the transaction." *United States v. Rivera*, 295 F.3d 461, 466-67 (5th Cir. 2002) (quotation marks and citation omitted). Donald stresses that specific intent is a high degree of *mens rea.* While this is true, it still may be proven by circumstantial evidence. *United States v. Nguyen*, 493 F.3d 613, 624 (5th Cir. 2007).

The evidence at trial established that Donald was relatively knowledgeable about federal tax practices and allowable deductions. There was also evidence that he used this knowledge to fraudulently claim a mileage deduction for a client and then offered fictitious logs as supportive evidence. Furthermore, he lied to his clients by assuring them that he was an accountant. This evidence, coupled with the type of deductions claimed, was sufficient to prove his intent.[1]

To find Donald guilty of conspiracy, the jury must have found that Tonya intended to violate the law as well. She testified that she attended a tax-preparation course in which she was taught how to prepare federal income tax returns. That course included discussion on the legality of certain deductions. Despite this class and her on-the-job experience, she frequently inflated the size of deductions claimed by her clients. Although Tonya testified that these were all honest mistakes, the jury did not need to believe her. *See United States v. Bernegger*, 661 F.3d 232, 240-41 (5th Cir. 2011). There was enough evidence from which the jury could infer specific intent.

Donald also challenges the sufficiency of the evidence presented for the thirteen substantive counts of aiding and assisting in the preparation of a false

---

[1] Donald also asks that we hold, as a general matter, that IRS Form 8453 creates a presumption that the information provided to the tax preparer is correct and that this presumption should preclude the jury from finding that Donald intended to commit fraud. Assuming without deciding that the presumption exists, the evidence presented was sufficient to overcome the presumption.

return.  *See* 26 U.S.C. § 7206(2).  To establish a violation, the government needed to prove that Donald "willfully aided, assisted, counseled, or advised another in the preparation or presentation under the internal revenue laws of a document that is fraudulent or false as to any material matter." *United States v. Mudekunye*, 646 F.3d 281, 285 (5th Cir. 2011) (quotation marks and citation omitted).  Donald argues that there was insufficient evidence linking him to the relevant returns because witnesses did not see him inputting each detail.  His argument misstates what the government must prove.

"[A] person need not actually sign or prepare a false tax return to either conspire to or actually aid and abet the filing of a false income tax return." *United States v. Clark*, 577 F.3d 273, 285 (5th Cir. 2009) (quotation marks and citation omitted).  Rather, the statute reaches a person who willfully "advises the preparation or presentation" of a return.  26 U.S.C. § 7206(2).  The evidence presented clearly demonstrates, either directly or by reasonable inference, that Donald took part in the preparation of the returns for which he was convicted.  The evidence was sufficient.

## V.     *Donald's Request for a Continuance*

Finally, Donald argues that the district court erred by refusing to grant him a fifth continuance on the eve of trial to give him time to retain a different attorney.  We review the district court's decision for abuse of discretion. *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007).  The district court has wide discretion when considering these motions so long as the defendant had a reasonable opportunity to secure counsel of his choice. *Newton v. Dretke*, 371 F.3d 250, 255 (5th Cir. 2004).  There is little doubt that Donald had enough time here.  The grand jury indicted Donald in December 2008.  By January 2009, Donald had secured counsel.  Throughout the next year, he was granted four continuances.  Eventually, a trial date was set: Monday, March 1, 2010.  The

No. 11-20210

Friday afternoon before, Donald made his last request for continuance. Noting that his request for a fifth continuance came at the eleventh hour and that it risked prejudicing the government, the district court denied his motion. This was not an abuse of discretion. *See United States v. Hughey*, 147 F.3d 423, 432 (5th Cir. 1998).

AFFIRMED.

No. 11-20210

JENNIFER WALKER ELROD, Circuit Judge, concurring in part and concurring in the judgment:

A jury convicted Donald and Tonya Womack and I agree that we must affirm its verdict. I also agree with much of the reasoning of the majority opinion and join that opinion except for Part III. I write separately because I would hold that the government's closing argument went well beyond the evidence admitted at trial and thus was plainly improper. We must affirm because the trial record contains ample evidence of guilt. Still, the government's improper remarks are troubling, especially in light of our many recent reminders to prosecutors to stick to the evidence during closing arguments.[1]

It is well-settled that "[a] prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *United States v. Vargas*, 580 F.3d 274, 277–78 (5th Cir. 2009). Here, the government transgressed this limitation in two important ways.

---

[1] This circuit has confronted too many improper closing arguments in recent years. *See, e.g., United States v. Jefferson*, 432 F. App'x 382, 389–93 (5th Cir. 2011) (unpublished) (clearly improper prosecutorial remarks did not affect substantial rights given other evidence of guilt); *United States v. Aguilar*, 645 F.3d 319, 322–27 (5th Cir. 2011) (reversing on plain error review due to improper remarks); *United States v. Raney*, 633 F.3d 385, 395–96 (5th Cir. 2011) (per curiam) (reversing on other grounds but noting that "[d]espite our precedent clearly condemning such remarks, the government continues to disregard our admonishments"); *United States v. Pittman*, 401 F. App'x 895, 898–901 (5th Cir. 2010) (unpublished) (clearly improper remarks did not affect substantial rights); *United States v. Gracia*, 522 F.3d 597 (5th Cir. 2008) (reversing on plain error review due to improper remarks).

Although the government quibbled at oral argument as to whether its closing remarks were improper, it unquestionably should have known that it was inappropriate to refer to items that were not in evidence and that it told the court it would not use. It has long been recognized as "verboten" for a prosecutor to "directly refer to or even allude to evidence that was not adduced at trial." *United States v. Murrah*, 888 F.2d 24, 26 (5th Cir. 1989) (citing *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978)). As the Supreme Court put it more than 75 years ago: "[W]hile [the United States Attorney] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

No. 11-20210

First, the government improperly used the fake mileage logs evidence against Mrs. Womack during its closing argument—not just once, but twice.[2] These remarks were improper because, as the majority opinion correctly concludes, the false mileage logs were evidence only of Mr. Womack's intent, not Mrs. Womack's.

Second, the government repeatedly insinuated in its closing that the Womacks were engaged in a large-scale fraud far beyond the 25 fraudulent tax returns introduced at trial—despite assuring the district court that it would not and that it lacked the evidence to do so. The Womacks filed a pre-trial motion requesting funds for an expert to testify that the vast majority of returns they prepared were honest and accurate. After a lengthy hearing, the district court denied the motion. But the district court conditioned its denial on the government's representation—as "an officer of the court"—that it would not argue that the thousands of returns outside of its investigation were illegal. Indeed, the government told the district court that it did not even have the evidence to support such an argument. At trial, the government put on evidence of 25 false returns. In its closing, however, it repeatedly suggested that those 25 returns were just a sampling of thousands more false returns, as the following closing argument excerpts reveal:[3]

- "The way to make money at this operation is a volume business. You get them in, you charge them $150, you run up how many thousands of returns you can do in a year. . . . It gets worse than that. The only way you can churn them out like that is if you cookie-cutter, churning out the same

---

[2] One of the Womacks' former customers, Robert Walenta, testified at trial that the IRS informed him in 2007 that he owed thousands of dollars related to tax returns prepared by Front Door. Mr. Walenta contacted Mr. Womack, who gave him two amended tax returns with falsified mileage logs attached to submit to the IRS. This "other acts" evidence was admissible under Rule 404(b)(2) as evidence of Mr. Womack's intent, but it was not admissible against Mrs. Womack.

[3] The majority opinion only quotes some of these excerpts.

No. 11-20210

Schedule A and the same Form 2106 over and over again, just tinkering a little bit with the numbers. *That's how you are* [*sic*] *make money. It's not the bald way. It's the sneaky way, the dishonest way.*" (Emphasis added).

• "Together, [the Womacks] operated this business, and together they benefitted from their fraud. *That's how they built their business*, and they took home the income from their business at the end of the day." (Emphasis added).

• "The benefit to the Womacks were happy customers, repeat business . . . . [T]his was a way for the Womacks to build the clientele, build revenue, get people in the door, get people coming back next year. And because of this, of course, they obtained a competitive advantage. Their competitors in the tax preparation field, imagine being an honest tax preparer trying to build a clientele. *The honest tax preparer can't promise a large refund every year.*" (Emphasis added).

• "If you do a little simple math that they prepared 3,000 returns a year and charged approximately $150 per return, that comes out to a revenue of over -- about $450,000. For a small business, that's a lot of money. And we know that some of that money went into the swimming pool in the backyard of the Womacks' home."

• "As husband and wife they ran this business, as husband and wife they were there in the business day in and day out. As husband and wife they reap the reward. As husband and wife they spent the money and lived the life."

These statements are not vague, as the majority opinion would have it. They plainly suggest, again and again, that fraud permeated the Womacks' tax preparation business, although the government had assured the court and defense counsel that it would not do this. These remarks were clearly improper.

But our appellate review does not end here. "[W]hether the prosecutor's remark was legally improper" is only the first step in reviewing an improper closing argument claim. *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir.

17

2008). Second, we ask "whether the remark 'prejudiced the defendant's substantive rights.'"[4] *Id.* (quoting *United States v. Morganfield*, 501 F.3d 453, 467 (5th Cir. 2007)). In making this prejudice determination, we consider "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *Raney*, 633 F.3d at 394 (internal quotation marks omitted).

Applying this three-factor prejudice standard, reversal is unwarranted. As for the false mileage logs testimony, the magnitude of prejudicial effect was high because the evidence was perhaps the most damning *mens rea* evidence presented at trial. But the district court issued a cautionary instruction and, more importantly, the trial record contains ample evidence of Mrs. Womack's guilt. The jury heard the testimony of numerous Front Door customers that the Womacks repeatedly claimed the same itemized deductions for their customers, regardless of the customer's individual financial situation. The jury also heard the testimony of Special Agent Rosalez, that when he visited Front Door undercover, posing as a customer, a receptionist asked him if he would like a refund of $3,200, $3,500, or $4,200, and explained that the larger the refund he selected, the longer he would have to wait. He selected $4,200, paid an up-front fee of $148, and left. He later received from Front Door a tax return that yielded a $4,200 refund. It is rather incredible that Tonya could have been unaware of this practice while working in Front Door's small office. Having weighed the pertinent prejudice factors, I cannot conclude that the government's improper comments about the mileage logs "cast[] doubt on the correctness of the jury verdict." *Vargas*, 580 F.3d at 278.

Nor was there prejudice on the basis of the government's remarks about the Womacks being engaged in a large-scale fraud. The first two prejudice

---

[4] When, as here, our review is for plain error, this second step "overlaps with the third prong of plain error review." Vargas, 580 F.3d at 278.

factors weigh in favor of reversal because the prejudicial effect was high and no cautionary instructions were issued.   But the evidence of guilt was strong enough that the prosecution's improper remarks do not undermine confidence in the verdict.

For the foregoing reasons, I respectfully concur in part and concur in the judgment.