# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50501

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

 Plaintiff - Appellee

v.

BELIA MENDOZA,

 Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:15-CR-416

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

 Belia Mendoza and two co-defendants were charged in a 22-count indictment stemming from their tax-fraud conspiracy. Mendoza and her co-defendants were convicted in a joint jury trial. Mendoza challenges the sufficiency of the evidence to support her convictions; the district court's denial of her motion for a new trial; the district court's upward departure from the federal sentencing guidelines; the failure of the district court to *sua sponte*

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50501

sever Mendoza's trial from the trial of her co-defendants; and the ineffective assistance of her counsel during sentencing. We AFFIRM in part and VACATE and REMAND in part.

## I.     BACKGROUND

For several years, beginning in 1999, Mendoza owned and operated a tax preparation business, Mendez Tax Service ("MTS"), in El Paso, Texas. Mendoza employed her daughter, Margarita Hernandez, and her niece, Denise Duchene, as tax preparers at MTS. To maximize clients' refunds, MTS preparers, including Mendoza, prepared numerous fraudulent returns containing false or inflated items, such as false Schedule C income, false and inflated education credits, false and inflated dependent and child care expenses, false and inflated business expenses, false personal exemptions, and false filing statuses. Many of their clients were unaware of the falsities contained in their tax returns, which MTS often filed directly on their behalf.

Following a Government investigation, Mendoza, Hernandez, and Duchene were charged with conspiracy to prepare fraudulent tax returns during the 2008 through 2010 tax years, in violation of 18 U.S.C. § 371, and multiple counts each of willfully aiding and assisting in the preparation of fraudulent tax returns, in violation of 26 U.S.C. § 7206(2). Mendoza and her co-defendants were jointly tried before a jury and convicted on all counts.[1]

The defendants, jointly and separately, moved for a judgment of acquittal at the close of the Government's case and at the close of evidence and renewed their motion after trial. They also filed a joint motion for new trial. The district court denied both motions and sentenced Mendoza to a total of 96 months of imprisonment: 60 months on count one (conspiracy) and 36 months

---

[1] One of the substantive counts against Mendoza was dismissed on the Government's motion before the case went to trial.

2

running concurrently on counts two, three, five, six, and seven (preparation of fraudulent returns), but consecutively to the sentence for count one.  The 96 months represented an upward departure from the guideline range, pursuant to U.S.S.G. § 5K2.21, taking account of Mendoza's leadership role in the conspiracy and substantial uncharged conduct.  Mendoza timely appealed.

## II.    DISCUSSION

### A. Sufficiency of the Evidence

Mendoza challenges the sufficiency of the evidence on all counts.  She "preserved [her] sufficiency challenge by moving, pursuant to Federal Rule of Criminal Procedure 29(a), for judgment of acquittal at the close of both the Government's case-in-chief and all the evidence.  Accordingly, review is *de novo*." *United States v. Mudekunye*, 646 F.3d 281, 285 (5th Cir. 2011).  "That evaluation views 'all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find guilt beyond a reasonable doubt.'" *United States v. Morrison*, 833 F.3d 491, 499 (5th Cir. 2016) (quoting *United States v. Churchwell*, 807 F.3d 107, 114 (5th Cir. 2015)).

### 1. *Count One (Conspiracy)*

Conspiracy to prepare false tax returns in violation of 18 U.S.C. § 371 requires the Government to prove that:  (1) Mendoza agreed with another person to pursue an unlawful objective; (2) she joined the conspiracy knowing of its unlawful objective; and (3) at least one member of the conspiracy committed an overt act in furtherance of it.  *Morrison*, 833 F.3d at 499 (citing *United States v. Mann*, 493 F.3d 484, 492 (5th Cir. 2007)).  Mendoza argues that none of the Government's witnesses testified that there was an agreement between Mendoza and any other person to defraud the United States.  But "an agreement to be part of a conspiracy need not be explicit and 'may be inferred from a concert of action.'" *Id.* at 500 (quoting *Mann*, 161 F.3d at 847).

No. 16-50501

There was ample circumstantial evidence that Mendoza led a conspiracy to prepare fraudulent tax returns.  There was evidence that Mendoza owned and operated MTS.  She trained her two co-defendants and supervised their day-to-day work.  They worked together in close quarters in a converted garage that was adjacent to Mendoza's home.  Beginning in 2010, Mendoza permitted her co-defendants to use her personal Preparer Tax Identification Number to file clients' returns.  Each co-defendant prepared fraudulent returns with similar patterns of false or inflated items, such as false Schedule C income, false and inflated education credits, false and inflated dependent and child care expenses, false and inflated business expenses, false personal exemptions, and false filing statuses.  That each preparer used similar methods raises the inference that there was an agreed-upon *modus operandi* for decreasing tax liabilities and increasing refunds of MTS clients.  Additionally, and quite significantly, the jury heard that Mendoza admitted to IRS agents that she prepared numerous fraudulent returns and was able to identify from a list that IRS agents showed her several MTS clients for whom her co-defendants had prepared false returns, indicating that she had knowledge of their misconduct.

This evidence is sufficient to support the finding that an agreement existed between Mendoza and her co-defendants to prepare fraudulent tax documents.  *See id.* at 499–500 (finding sufficient evidence of conspiracy when defendant oversaw operation of the business and prepared a return that exhibited similar pattern of false losses typical of other clients' returns); *Mudekunye*, 646 F.3d at 285 (evidence of conspiracy sufficient when defendant worked as a tax preparer, had a cubicle at the tax office at the center of the conspiracy, had multiple clients, and prepared fraudulent returns in the same manner as his co-conspirators); *United States v. Womack*, 481 F. App'x 925, 933 (5th Cir. 2012) (evidence of conspiracy sufficient when defendant was one of two tax preparers in small business, both preparers used the same electronic

4

filing number, and they made similar errors in the preparation of the relevant returns).

### 2. *Counts Two, Three, Five, Six, and Seven (Preparation of Fraudulent Returns)*

Mendoza also challenges the sufficiency of the evidence sustaining her convictions on the substantive counts of tax fraud. Those counts required the Government to prove beyond a reasonable doubt that: (1) Mendoza aided, assisted, counseled, or advised another in the preparation of the tax return in question; (2) the tax return contained a statement falsely claiming income, deductions, or tax credits; (3) Mendoza knew that the statement was false; (4) the false statement was material; and (5) Mendoza acted willfully. *Morrison*, 833 F.3d at 500 (citing 26 U.S.C. § 7206(2) and *United States v. Clark*, 577 F.3d 273, 285 (5th Cir. 2009)). Mendoza only contests that the Government proved that she acted willfully.

Her own admissions, however, are inculpatory evidence of willfulness. An IRS special agent testified that Mendoza initially denied any wrongdoing, but when presented with evidence accumulated during the Government's investigation, she admitted that she fabricated or inflated several items on clients' returns over the years because she "got greedy" and wanted clients to get larger tax refunds so they would continue to use MTS and refer other clients. Mendoza concedes that the agent's testimony shows willfulness, but argues that his testimony is not credible because it is uncorroborated and was not recorded. This argument is unavailing. "[C]redibility determinations and weighing of evidence are the province of the jury, not appellate judges." *Id.*; *see also Mudekunye*, 646 F.3d at 286 ("[I]t is not our role to evaluate witness credibility—that, of course, is for the jury[.]").

Although this testimony is general evidence of Mendoza's intent, the Government had the burden to prove willfulness with respect to each tax

5

return in question. *See Morrison*, 833 F.3d at 500–01. To establish such proof, the Government called each taxpayer as a witness. Mendoza argues that although each taxpayer testified to inaccuracies in their tax returns, nothing in their testimony indicates that the errors were anything more than innocent mistakes.

With respect to counts two, five, and seven, corresponding to tax returns prepared on behalf of MTS clients Myrna Gallegos and Steven Olivas, Mendoza's argument rings hollow. Both Gallegos and Olivas testified that they met with Mendoza and she prepared their tax forms. Gallegos testified that she told Mendoza that she paid $300 in educational expenses in 2008 and did not tell Mendoza that she incurred any educational expenses in 2010. And yet, a $2,400 education credit was claimed on both Gallegos's 2008 and 2010 tax returns. Similarly, Olivas's 2008 tax return claimed a $2,400 education credit, although he testified that he never told Mendoza that he incurred any educational expenses in 2008. Olivas's 2008 tax return also showed an inflated mileage count as a business expense, which was not supported by the paperwork he submitted to her. The falsely claimed credits and expenses on Gallegos's and Olivas's returns exhibit a similar pattern to fraudulent returns prepared on behalf of other MTS clients. This evidence is sufficient to support the jury's finding on willfulness as to counts two, five, and seven. *See, e.g.*, *Mudekunye*, 646 F.3d at 286 (sufficient evidence to sustain convictions for aiding and assisting preparation of false returns when evidence established that defendant discussed tax returns and refunds with clients, received tax-preparation information from them, and claimed business losses, credits, and deductions on their returns that were neither substantiated nor requested); *United States v. Perez*, 618 F. App'x 241, 242 (5th Cir. 2015) (same).

Counts three and six, corresponding to tax returns that Mendoza prepared on behalf Angel Guillen, present a closer issue. Notably, the

No. 16-50501

Government does not dispute that the evidence was insufficient as to these counts. The only purported inaccuracy in Guillen's tax returns pertains to his filing status of "single," "head of household" on his 2008 and 2009 returns. Guillen testified that he and his wife were never married by a church or court, but that they hold themselves out as common-law husband and wife. Because Guillen resides in a state, Texas, that recognizes common-law marriages, the Government charged that Guillen should have used a filing status of either "married, filing jointly" or "married, filing separately." But during his testimony, Guillen was confused about which filing status was correct because he was not legally married and he could not recall whether he told Mendoza that he was married, nor could he recall ever filing as a married person prior to 2008. Guillen also testified that he and his common-law-wife do not share the same last name.

Guillen's testimony does not clearly demonstrate willfulness. Mendoza argues that "if the evidence gives equal or nearly equal circumstantial support to a theory of guilt or innocence, we must reverse the conviction, as under these circumstances a reasonable jury *must necessarily entertain* a reasonable doubt." *United States v. Rivera*, 295 F.3d 461, 466 (5th Cir. 2002). The evidence is not sufficient to sustain Mendoza's convictions on counts three and six. Accordingly, we vacate her convictions and sentences on those counts. We remand to the district court to determine whether any changes to Mendoza's cumulative sentence should be made in light of the vacated convictions.[2]

---

[2] The foregoing analysis in Part II.A. disposes of Mendoza's appeal from the denial of her motion for judgment of acquittal because her claim was based solely on her challenge to the sufficiency of the evidence.

7

No. 16-50501

## B. Motion for New Trial

We review a district court's decision to grant or deny a motion for new trial for an abuse of discretion. *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004). Rule 33 of the Federal Rules of Criminal Procedure permits the district court to vacate judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. We have generally held that "the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *Wall*, 389 F.3d at 466 (citing *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997)).

Mendoza's sole ground of error is that the evidence was insufficient to sustain her convictions. We have already reviewed the sufficiency of the evidence in discussing Mendoza's motion for judgment of acquittal, which involves a more stringent standard than a motion for new trial.[3] Because there was insufficient evidence to sustain counts three and six, we have vacated Mendoza's convictions for those counts—a remedy that, from the defendant's perspective, is superior to the grant of a new trial. Therefore, as to those convictions, Mendoza's motion for new trial is moot. We otherwise find that the district court did not abuse its discretion in denying Mendoza's Rule 33 motion and affirm her convictions as to all remaining counts.

## C. District Court's Failure to *Sua Sponte* Sever Mendoza's Trial

Mendoza argues that the district court erred by failing to sever her trial from that of her co-defendants. Mendoza neither moved for severance nor objected at trial to the joinder of her co-defendants. As a result, our review is

---

[3] *See United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997) (While on a motion for judgment of acquittal, the district court must view the evidence in the light most favorable to the verdict and, in effect, "assumes the truth of the evidence offered by the prosecution," on a motion for new trial, the court may weigh the evidence and consider the credibility of witnesses. "Consequently, . . . a motion for new trial is reviewed under a more lenient standard than a motion for judgment of acquittal.").

restricted to plain error.  *United States v. Carreon*, 11 F.3d 1225, 1240 (5th Cir. 1994).

Mendoza and her co-defendants were indicted together and charged with conspiracy.  Joinder, therefore, is presumptively proper.  "Joint proceedings are not only permissible but are often preferable when the joined defendants' criminal conduct arises out of a single chain of events."  *Kansas v. Carr*, 136 S. Ct. 633, 645 (2016).  "It is the rule, therefore, not the exception, that 'persons indicted together should be tried together, especially in conspiracy cases.'"  *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012) (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)).

To rebut this presumption, Mendoza "must show that:  (1) the joint trial prejudiced [her] to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration."  *United States v. Snarr*, 704 F.3d 368, 396 (5th Cir. 2013).  In other words, she must not only demonstrate that specific events occurring in the course of the trial caused "substantial prejudice," but also that the district court's instructions to the jury did not adequately protect her from such prejudice.  *Id.*  Because of our limited review, the error, if any, must be "'so obvious and substantial that failure to notice it would affect the fairness, integrity, or public reputation of (the) judicial proceedings and would result in manifest injustice.'"  *Carreon*, 11 F.3d at 1240 (quoting *Pofahl*, 990 F.2d at 1479).

Mendoza argues that the testimony of two witnesses, IRS agent David Montoya, and former MTS client, Lynnette Dunn, created compelling prejudice because their testimony showed willfulness on the part of Mendoza's co-defendants, Duchene and Hernandez, while no testimony clearly demonstrated willfulness as to Mendoza.  As for the testimony of Agent Montoya, any potential prejudice was cured by the trial court's instructions.  After he

No. 16-50501

testified, the court instructed the jury that it could not consider his testimony "to prove any offense against either Defendant Belia Mendoza or Margarita Hernandez." Furthermore, at the end of the trial, the district court properly instructed the jury to limit evidence to the appropriate defendant.[4] Therefore, "the jury was able to separate the evidence and properly apply it only to those against whom it was offered." *Pofahl*, 990 F.2d at 1483; *see also United States v. Fields*, 72 F.3d 1200, 1215 (5th Cir. 1996). With respect to Dunn, the Government contends that her testimony was not prejudicial because even if Mendoza's trial had been severed, Dunn's testimony would have been admissible as evidence of the conspiracy. Alternatively, the Government argues that the prejudice was not compelling, in view of other evidence demonstrating Mendoza's willfulness. We agree.

Accordingly, the district court did not commit plain error in failing *sua sponte* to sever Mendoza's trial from that of her co-defendants.

D. Mendoza's Above-Guideline Sentence

Mendoza also contends that the district court abused its discretion when it sentenced her above the advisory guideline range. But because she did not object to her sentence, our review here is limited to plain error. We may reverse the sentence "only if (1) there is error (and in light of [*United States v. Booker*, 543 U.S. 220 (2005)], an 'unreasonable' sentence equates to a finding

---

[4] The district court instructed the jury:

> Multiple defendants, multiple counts. A separate crime is charged against one or more of the defendants in each count of the indictment. Each count and the evidence pertaining to it should be considered separately. The case of each defendant should be considered separately and individually. The fact that you find one or more of the accused guilty or not guilty of any of the crimes charged should not control your verdict as to any other crime or any other defendant. You must give separate consideration to the evidence as to each defendant.

of error); (2) it is plain; and (3) it affects substantial rights." *United States v. Peltier*, 505 F.3d 389, 392 (5th Cir. 2007) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).  If those prerequisites are satisfied, we have discretion to correct the forfeited error, but we "should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  *Id.* (quoting *Olano*, 507 U.S. at 732).  A district court's upward departure from the guideline range is reasonable if the court properly interpreted and applied the sentencing guidelines and "the court's reasons for departing 1) advance the objectives set forth in 18 U.S.C. § 3553(a)(2) and 2) are justified by the facts of the case."  *United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006).

In Mendoza's case, the sentencing guideline range for imprisonment was 51 to 63 months.  The district court sentenced her to a total of 96 months' imprisonment, departing upward from the guideline range pursuant to U.S.S.G. § 5K2.21.  Section 5K2.21 provides:

> The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.

In its Statement of Reasons, the district court explained that the upward departure was warranted because:

> The evidence presented at trial was very clear that Defendant Mendoza was in control and her co-defendants would not have engaged in the misconduct but for her.  It is also clear from Defendant's confession that her conduct had been ongoing for many years before the Internal Revenue Service caught up with her.

Mendoza claims that the upward departure was erroneous because it was based on factors that were either fully accounted for by the guidelines

already or were unsupported by the record. She contends her "control" of the fraud scheme was already reflected in the two-level increase she received for her leadership role, pursuant to U.S.S.G. § 3B1.1(c). Furthermore, Mendoza claims that nothing in the record indicates that her co-defendants would not have engaged in the misconduct, but for her. Finally, Mendoza argues that because her guideline range was based on the total documented loss of $840,499, charged to the conspiracy, and not the loss of $651,547, directly attributable to her own conduct, her sentence already accounted for "uncharged conduct."

These arguments lack merit. We discern no error in the district court's interpretation and application of the guidelines. Moreover, an upward departure pursuant to § 5K2.21 was justified by the facts of Mendoza's case.

There is support in the record for the district court's finding that Mendoza's recruitment of her co-defendants into the fraud scheme was not adequately reflected in her advisory guideline range. MTS was Mendoza's company. She employed Hernandez, who was her daughter, and Duchene, her niece. She trained and supervised them. In fact, she exercised complete control over her co-defendants' conduct by requiring them to ask permission before preparing and filing a false tax return. And she routinely granted them permission to do so.[5]

More importantly, there was substantial uncharged conduct beyond the total documented loss of $840,499, justifying the district court's upward departure. Not only did Mendoza admit her conduct had been ongoing for many years before the IRS caught up with her, but even during the three-year period under investigation, she was responsible for filing an additional 370

---

[5] Some of these facts are contained only in Mendoza's Presentence Report; however, a district court may rely on information in the defendant's Presentence Report in fashioning its upward departure. *United States. v. Saldana*, 427 F.3d 298, 312 n.58 (5th Cir. 2005).

No. 16-50501

false returns containing bogus education credits that were not included in the indictment.  Furthermore, the conspiracy used false unreimbursed expenses, medical expenses, dependent child care expenses, and manipulated income and other expenses that the IRS could not easily verify, unlike education expenses that can be compared to 1098T forms that the educational institution separately files.  Therefore, it is likely that Mendoza and her co-conspirators prepared and filed numerous additional false returns that were not included in the IRS's documented losses.  In addition, the IRS's total loss calculation does not account for the intangible harms that Mendoza has caused by placing her clients at risk of being audited, fined, and having to pay substantial interest and penalties, and by helping to create a culture of sanctioned cheating.

We have previously upheld similar and even larger upward departures as reasonable.  *See, e.g.*, *Saldana*, 427 F.3d at 315–16 (upholding substantial upward departure that accounted for uncharged criminal conduct); *United States v. Ashburn*, 38 F.3d 803, 810 (5th Cir. 1994) (en banc) (upholding significant upward departure considering defendant's serious criminal history not adequately accounted for by his criminal history category); *United States v. Lambert*, 984 F.2d 658, 664 (5th Cir. 1993) (en banc) (same).  On the facts here, the district court's upward departure from the guideline range was not an abuse of discretion and certainly not plain error.

E. Ineffectiveness of Counsel

Finally, Mendoza argues that her counsel at sentencing was ineffective for failing to object to the district court's upward departure and for failing to advocate, instead, for a downward variance.  As Mendoza acknowledges, our Court rarely considers ineffective assistance of counsel claims on direct appeal because in most instances, the record is not sufficiently developed to evaluate the merits of the claim.  *See, e.g.*, *United States v. Isgar*, 739 F.3d 829, 841 (5th

Cir. 2014) ("Sixth Amendment claims of ineffective assistance of counsel should not be litigated on direct appeal, unless they were previously presented to the trial court."). Mendoza submits that her case is the rare instance where the record has been sufficiently developed. We disagree.

There has been no hearing before the district court on Mendoza's allegations of ineffective assistance of counsel, nor have Mendoza or her attorney at sentencing submitted affidavits concerning such allegations, and the district court did not have occasion to make any factual findings regarding these allegations. Under the circumstances, we lack sufficient information to evaluate the claim and would be forced to speculate as to the reasons for her attorney's alleged acts and omissions. *See, e.g.*, *United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007) (per curiam); *United States v. Kizzee*, 150 F.3d 497, 502–03 (5th Cir. 1998). Accordingly, this claim is not yet ripe for review.

## III.   CONCLUSION

We VACATE Mendoza's convictions and sentences on counts three and six and REMAND to the district court for further proceedings consistent with this opinion. We AFFIRM Mendoza's convictions and sentences on all remaining counts.